**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JOHN FARNEY and CASSANDRA VALLIANOS**, individually and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| *Plaintiffs*, | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **ENDURANCE DEALER SERVICES, LLC** an Illinois limited liability company, and **ENDURANCE WARRANTY SERVICES, LLC**, an Illinois limited liability company, | |
| *Defendants*. | |

## CLASS ACTION COMPLAINT

Plaintiff John Farney ("Farney") and Plaintiff Cassandra Vallianos ("Vallianos" or) bring this Class Action Complaint and Demand for Jury Trial against Defendant Endurance Dealer Services, LLC. ("EDS") and Defendant Endurance Warranty Services, LLC ("EWS") to stop the Defendants from violating the Telephone Consumer Protection Act by making unsolicited, pre-recorded calls and other telemarketing calls to consumers, including to consumers who have registered their phone numbers on the National Do Not Call Registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by EDS' conduct. Plaintiff Farney and Plaintiff Vallianos, for this Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### PARTIES

1.     Plaintiff Farney is a Denver, Colorado resident.

2.     Plaintiff Vallianos is a Sunrise, Florida resident.

3.      Defendant EDS is an Illinois company headquartered in Northbrook, IL. EDS conducts business throughout this District, the state of Illinois, and the United States.

4.      Defendant EWS is an Illinois company headquartered in Northbrook, IL. EWS conducts business throughout this District, the state of Illinois, and the United States.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

6.      This Court has personal jurisdiction over the Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and because the wrongful conduct giving rise to this case was directed by Defendants from this District.

## TCPA BACKGROUND

7.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

8.      According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

9.      While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).*

10.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

11.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

12.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

13.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

14.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

15.     According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com.

16.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

17.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

18.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## INTRODUCTION TO EDS AND EWS

19.     EDS and EWS function as two parts of the same company.

20.     Both EDS and EWS are located in the same office, have the same management, and ultimately sell the same warranty products.[3]

21.     Both EDS and EWS sell aftermarket vehicle warranty plans to consumers throughout the U.S.

22.     EDS and EWS work with third-party agents and dealers who function as affiliates that sell EDS' and EWS's vehicle warranty plans to consumers.

23.     EDS and EWS also sell vehicle warranty plans directly to consumers. These plans can be purchased through various websites by calling Defendants directly.[4]

24.     When an affiliate agent sells a plan on, even if it purports to be just on behalf of EDS, it is financially benefiting both EDS and EWS.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://www.endurancewarranty.com/contact/
[4] *Id.*

25.     EDS and EWS rely on telemarketing either through direct efforts, or through affiliate agents in order to sell vehicle warranty plans.

26.     The telemarketing that is done by and on behalf of EDS and EWS includes the use of pre-recorded and other types of calls, including text messages, in order to solicit sales from consumers.

27.     Defendants and their agents place these calls to consumers' phone numbers without obtaining their prior express written consent.

28.     In response to Defendants' calls, Plaintiff Farney and Plaintiff Vallianos file this lawsuit seeking injunctive relief, requiring Defendant to stop making pre-recorded voice sales calls to consumers without their consent, and to otherwise stop placing unsolicited telemarketing calls to consumers whose phone numbers are registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## COMMON ALLEGATIONS

### EDS and EWS Are Responsible for the Illegal Telemarketing
### Practices Used by Third-Party Agencies to Generate Vehicle Warranty Sales

29.     Defendants use the website enduranceds.com to sign-up agents that will sell their vehicle warranty plans to consumers:

5



30.     As per the above screenshot, Defendants provide agents with support, training and resources.

31.     The plans that the agents sell are administered by EDS and EWS:

> • Direct Access to Decision Makers – EDS is the administrator and obligor of our own vehicle protections programs [6]

32.     Once a consumer purchases a plan, all support and customer management are handled by EDS and EWS.[7]

33.     Agents that sell vehicle warranty plans on behalf of the Defendants do so using telemarketing as a primary means of generating sales.

34.     The third-party agencies that generate leads on behalf of the Defendants are not careful to ensure that they have the required prior express written consent required to be calling consumers using pre-recorded messages and/or whose numbers are registered on the DNC.

---

[5] https://www.enduranceds.com/agents
[6] *Id.*
[7] *Id.*

35.     Frustrated consumers have complained directly to EDS and EWS about the unsolicited telemarketing calls they are receiving. In response, EDS and EWS have placed the blame for the calls on third-party telemarketing agencies, even acknowledging the fact that these agencies oftentimes place unsolicited telemarketing calls:

**BBB Page for EWS Complaints:**



02/14/2020

I had an extended vehicle warranty on my 2010 **** ****** SHO that has expired more than a year ago. Representatives from Endurance Dealer Services keep calling and harassing me to renew the service. They literally call me 3 to 4 times a week -- sometimes twice a day -- to renew my coverage. I tell them I am not interested and to please remove my name from their list. I will ask to speak to a supervisor and they hang up on me. I tell them to stop calling me and remove my name from their list and they will call again two days later. They call me in the morning, afternoons, at dinner time. Once last summer I inquired about how much the warranty would cost. When they told me I said I was not interested and they had me speak to another representative who said they could lower the cost. I told them I was not interested and did not think it was worth it. They then had me speak to another representative who started yelling at me and literally said I was "crazy" and did not understand the value of this program. We started shouting at each other and I hung up on them. A week or so later they called yet again, and they keep calling me several times a week. I have gotten to the point where I will yell and curse and them and they will hang up and then two days later another representative will call me. I am not interested in renewing my coverage and want them to stop calling me.



**Response**                                                                02/14/2020

Please note, Endurance does not make "cold calls" or any outbound sales call unless specifically requested by a consumer via our online portal. There are many companies in the industry that do not abide by the VPA's Standards of Conduct and may be making unsolicited calls. Endurance understands the frustration that this can cause to the consumer and the confusion that may result when the consumer receives a mail piece from Endurance at the same time as these solicitation calls. Endurance can confirm that the solicitation calls did not originate from Endurance. [8]

---

[8]
https://www.bbb.org/us/il/northbrook/profile/auto-warranty-processing/endurance-warranty-services-llc-0654-88077689/complaints

**Complaint Type:** Advertising/Sales Issues    **Status:** Answered ❓



01/08/2020

I have received numerous calls to my phone numbers (which are all on the DO NOT CALL LIST), I also have received numerous letters by USPS regarding their warranty. I have NEVER done business with this company, nor will I. Any company that calls people out of the blue, and especially those on the national do not call list can not be trusted.



**Response**                                                     01/09/2020

Please note, Endurance does not make "cold calls" or any outbound sales call unless specifically requested by a consumer via our online portal. There are many companies in the industry that do not abide by the VPA's Standards of Conduct and may be making unsolicited calls. Endurance understands the frustration that this can cause to the consumer and the confusion that may result when the consumer receives a mail piece from Endurance at the same time as these solicitation calls. Endurance can confirm that the solicitation calls did not originate from Endurance. Endurance recommends that the consumer determine from what company the calls originate and contact that company to ask that they cease.

We are sorry for the frustration that Endurance's mail piece caused the consumer, and as a result of the consumer's complaint, our company placed the consumer on our internal "Do Not Mail" database to ensure that they do not receive any future direct mail advertisements from our company. Please allow up to 10 business days to process this request. The consumer may still receive additional mail pieces during the processing time.

[9]

The consumer that placed the above complaint rejected the response he/she received from EDS and EWS:

**Customer Response**                                                     01/09/2020

Complaint: ********

I am rejecting this response because:

You should take more care to control your marketing practices. You have wasted my time and money with your telemarketing and your direct mail.

Sincerely,

George ******

[10]

---

[9] *Id.*
[10] *Id.*

12/25/2019

For the last 7 or 8 months this company keeps making robo calls to my cell number, when I try to call them back I'm on hold for 20 to 25 minutes, when I do talk to someone I explain I have a warranty & I ask that there letters & phone calls stop, Like a real professional they hang up in my face wait 2 days & call me back, I've told this company I have a car warranty but I'm told I don't when I do, I'm sick of the calls & the letters again I've asked them to stop calling me & sending me letter but they will not remove my phone # & address, as for the phone calls I received not 1 call but 6 robo calls while I was on military deployment, calls came in at 4am, after 4am, 5am after 5am, & 7am & after 7am my time. I'm sick & tired of this company I've never made a call or wrote to them for a warranty I don't know this company I have a warranty BOTTOMLINE I WANT THIS CRAP TO STOP & STOP NOW,

**Response**                                                                 01/20/2020

Please note, Endurance does not make "cold calls" or any outbound sales call unless specifically requested by a consumer via our online portal. There are many companies in the industry that do not abide by the VPA's Standards of Conduct and may be making unsolicited calls. Endurance understands the frustration that this can cause to the consumer and the confusion that may result when the consumer receives a mail piece from Endurance at the same time as these solicitation calls. Endurance can confirm that the solicitation calls did not originate from Endurance. Endurance recommends that the consumer determine from what company the calls originate and contact that company to ask that they cease.                    11

## Other Telemarketing Complaints Directed to EDS and EWS:



**Pissedoff**
✎ 1 review

★☆☆☆☆  ⊘ Reviewer contacted                              Feb 18, 2020

**Leave me alone**

Never contacted them and they won't leave me alone between the phone calls email and letters they won't stop I have a 93 convertible and 95 sedan and they still want me to get extended warranty. Never realized there's so many stupid people
                                                                              12

The above complaint was posted on TrustPilot. EDS and EWS regularly respond to TrustPilot complaints.

36.     In addition, telemarketing complaint sites are filled with complaints consumers placed about calls they received from, or on behalf of EDS and EWS. This is just a small sampling of those complaints:

---

[11] *Id.*
[12] https://www.trustpilot.com/review/endurancewarranty.com?languages=en&stars=1

9

- "Answers as "Endurance," which is Endurance Warranty Services, LLC. Telemarketing. If you are registered on your state DNC list, or the National DNC list, then file a complaint."[13]

- "I have a phone line set up in my name for my elderly mother, who lives in another state. These people called her several times and then today and harassed her into thinking she had to give them a check or money today or my insurance would lapse. I have never heard of these people and certainly do not have insurance or warranty through them. My poor mother called me frantic and panicked because they had scared her into believing my insurance would lapse and I would be in trouble if she did not get them the money today. I am furious! I called the number they left with her only to be told that my mother's number is not in their system and that it must not have been their office. I went off and told them that is WAS their "office" and that I knew it was a big fat scam and that they better remove her number and NEVER call and harass her again. The man on the phone then told me he forwarded her number to their IT dept to ensure it was taken out of their system "in case it actually is there and I can't see it". Yeah, ok...LIAR and total scam!!!"[14]

- "Contacted by someone claiming to be the services department."[15] (consumer wound up signing up with EDS and EWS)

- "It's from Endurance Warranty Services, LLC a independent nationwide company marketing on behalf of leading third-party administrators yet not affiliated with any auto dealer or manufacturer."[16]

- "Keep getting calls from these crooks asking to take this extened courage didn't even know what kind of car I had or the make or model also received a letter from them after I told them to stop calling me and stop sending those stupid letters I know they are scams"[17]

37. The Federal Communication Commission has provided instruction stating that

sellers such as EDS and EWS may not avoid liability by having their telemarketing outsourced:

[A]llowing the seller to avoid potential liability by outsourcing its telemarketing activies to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to

---

[13] https://800notes.com/Phone.aspx/1-877-909-0440
[14] *Id.*
[15]
https://www.complaintsboard.com/us/il/northbrook/endurance-warranty-services-400-skokie-blvd-suite-105
[16] https://800notes.com/Phone.aspx/1-877-882-0147
[17] https://800notes.com/Phone.aspx/1-877-334-4872/5

judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declatory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

38.     To the extent telemarketing is being conducted by others to sell Defendants' products, EDS and EWS are aware of the telemarketing that is being done on their behalf without consent, but they continue to rely on these agents thereby ratifying the illegal telemarketing practices the agents use to generate sales.

39.     Finally, EDS and EWS benefit financially from sales that are generated by third-party agents.

40.     To make matters even worse, EDS and EWS also engage in direct telemarketing to consumers.

## PLAINTIFF FARNEY'S ALLEGATIONS

**Plaintiff Farney Received Many Unsolicited, Pre-recorded Calls Made by or on Behalf of Defendants Despite Many Requests for the Calls to Stop**

41.     In approximately July of 2019, Plaintiff Farney began receiving pre-recorded and other telemarketing calls on behalf of, or by, the Defendants.

42.     The pre-recorded messages were pertaining to an extended vehicle warranty, inviting Plaintiff Farney to press a button to speak with an agent, or press '2' to be added to a do not call list.

43.     Plaintiff Farney pressed '2' numerous times, but the calls continued to come in.

44.     For calls that did not start with a prerecorded message, when speaking to a live agent, Plaintiff Farney would specifically tell the agent that he was not interested and would ask

for his phone number to be added to a do not call list. In most instances, the agent would simply hang up.

45.     On February 21, 2020 at 9:24 AM, Plaintiff Farney received an autodialed call to his cell phone on behalf of, or directly from the Defendants using phone number 720-776-9179.

46.     The agent identified himself as William and provided a generic company name.

47.     Plaintiff Farney feigned interest in getting a warranty for his vehicle in order to determine who was calling him.

48.     The agent, William, asked Plaintiff Farney a series of qualifying questions to determine if Plaintiff Farney's vehicle would qualify for getting a vehicle warranty plan. Once the questions were answered, Farney was forwarded to a confirmation department.

49.     The new agent confirmed the details that William had already asked Plaintiff Farney. Farney questioned this agent about which company she worked for. The agent said she worked for "Endurance" and provided the website EnduranceDealerServices.com.

50.     EnduranceDealerServices.com forwards directly to EnduranceDS.com.[18]

51.     Once the EDS agent was finished confirming that Plaintiff Farney was eligible for a warranty plan, she put Plaintiff Farney back in contact with William, the first agent Plaintiff Farney had been speaking to. William then provided additional details about the price of the vehicle warranty and what the plan would cover.

52.     Plaintiff Farney ended the call making it clear he was not interested in getting a vehicle warranty plan.

53.     In total, Plaintiff Farney received in excess of 50 unsolicited calls from agents trying to sell extended vehicle warranties, including many prerecorded calls.

54.     These calls were placed using spoofed phone numbers that cannot be called back.

---

[18] http://debug.iframely.com/?uri=http%3A%2F%2Fendurancedealerservices.com

55.     For example, Plaintiff Farney was called by EDS and EWS, or their agents using phone number 720-776-9179, as was stated above, on February 21, 2020. When this phone number is called, it just rings and rings. No agents answer.

56.     The registry information for 720-776-9179 has been hidden online.[19]

57.     Plaintiff Farney was called by other phone numbers such as 720-526-5576 on February 25, 2020 at 11:24 AM. When Farney answered, the call was regarding an extended vehicle warranty. 720-526-5576 can also not be called back. When it's dialed, it just rings and rings.

58.     Additional calls that Plaintiff Farney received regarding extended vehicle warranties include:

- March 10, 2020 at 4:32 PM from 720-552-8576
- March 10, 2020 at 4:54 PM from 720-552-8575
- March 11, 2020 at 8:15 AM from 720-552-8575
- March 12, 2020 at 9:09 AM from 720-552-8576
- March 13, 2020 at 4:36 PM from 720-552-8575
- March 20, 2020 at 12:08 PM from 720-780-5459

59.     When the above phone numbers are dialed, it just rings and rings, consistent with the phone number Plaintiff was called by that connected with the Defendants.

60.     Plaintiff Farney does not have a relationship with Defendants, nor has he ever consented to any contact by or on behalf of Defendants.

61.     In addition, Plaintiff Farney opted-out many times from receiving calls from, or on behalf of, the Defendants.

---

[19] https://premium.whitepages.com/phone/1-720-776-9179

## PLAINTIFF VALLIANOS' ALLEGATIONS

### EDS and EWS Sent Unsolicited Text Messages to Plaintiff Vallianos' <u>DNC Registered Phone Number Without Her Consent</u>

62.     Plaintiff Vallianos registered her phone number on the DNC on November 28, 2006.

63.     Plaintiff Vallianos uses her phone for personal use only. It is not used for business purposes.

64.     Plaintiff Vallianos received an unsolicited autodialed text message from EDS and EWS on April 4, 2020 at 10:08 AM using phone number 855-997-2382:



65.     When 855-997-2382 is called, an automated system states, "Thank you for calling Endurance."

66.     The text message directed Plaintiff Vallianos to call 844-948-0553. When this number is called, an automated system states, "Thank you for calling Endurance."

67.     Plaintiff Vallianos received a second unsolicited autodialed text message from EDS and EWS on May 7, 2020 at 4:37 PM using phone number 407-315-2111 on her cell phone:



*Figure 1 - Thursday was May 7, 2020*

68.    When 407-315-2111 is called, an automated system states, "Thank you for calling Endurance."

69.    The text message directed Plaintiff Vallianos to call 855-224-0387. When this number is called, an automated system states, "Thank you for calling Endurance."

70.    Plaintiff Vallianos never gave consent to Defendants to call or text message her and has no prior relationship with Defendants.

71.    Defendants' unauthorized telephone calls harmed the Plaintiffs in the form of annoyance, nuisance, and invasion of privacy, and disturbed Farney's and Vallianos' use and enjoyment of their phones, in addition to the wear and tear on the phone hardware (including the phone battery) and the consumption of memory on the phones.

72.    Seeking redress for these injuries, Farney and Vallianos, on behalf of themselves and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited pre-recorded solicitations as well as other telemarketing calls to consumers whose phone numbers are registered on the DNC.

## CLASS ALLEGATIONS

## Class Treatment Is Appropriate for Plaintiffs' TCPA Claims

73.     Plaintiff Farney and Plaintiff Vallianos bring this action pursuant to Federal Rule

of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly

situated and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four
> years prior to the filing of this action through class certification (1) Defendants (or
> an agent acting on behalf of the Defendants) called, (2) for substantially the same
> reason the Defendants called Plaintiff Farney, (3) using a pre-recorded message,
> and (4) for whom the Defendants claim (a) they obtained prior express written
> consent in the same manner as either Defendant claims it obtained prior express
> written consent to call Plaintiff Farney, or (b) they did not obtain prior express
> written consent.

> **Do Not Call Registry Class**: All persons in the United States who from four
> years prior to the filing of this action through class certification (1) Defendants (or
> an agent acting on behalf of the Defendants) called more than one time during any
> twelve month period during which the person's telephone number was registered
> on the DNC, (2) for substantially the same reason the Defendants called Plaintiff
> Vallianos, and (3) for whom the Defendants claim (a) they obtained prior express
> written consent in the same manner as either Defendant claims it obtained prior
> express written consent to call Plaintiff Vallianos, or (b) they did not obtain prior
> express written consent.

> **Internal Do Not Call Class**: All persons in the United States who from four years
> prior to the filing of this action through class certification (1) Defendants (or an
> agent acting on behalf of the Defendants) called more than one time during any
> twelve month period (2) for substantially the same reason the Defendants called
> Plaintiff Farney.

74.     The following individuals are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendants, their

subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its

parents have a controlling interest and their current or former employees, officers and directors;

(3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion

from the Classes; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against either Defendant have been fully and finally

adjudicated and/or released. Plaintiff Farney and Plaintiff Vallianos anticipate the need to amend the Class definitions following appropriate discovery.

75. **Numerosity**: On information and belief, there are thousands of members of the Classes such that joinder of all members is impracticable.

76. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a) whether Defendants (or agents on behalf of the Defendants) used a pre-recorded voice when placing calls to Plaintiff Farney and the members of the Prerecorded No Consent Class;

    (b) whether Defendants (or agents on behalf of the Defendants) placed pre-recorded voice calls to Plaintiff Farney and members of the Prerecorded No Consent Class without first obtaining consent to make the calls;

    (c) Whether Defendants (or agents on behalf of the Defendants) made more than one telemarketing call to Plaintiff Vallianos and members of the Do Not Call Registry Class;

    (d) whether Defendants (or agents on behalf of the Defendants) placed telemarketing calls to Plaintiff Vallianos and members of the Do Not Call Registry Class without first obtaining consent to make the calls;

    (e) Whether Defendants (or agents on behalf of the Defendants) made telemarketing calls to Plaintiffs and members of the Internal Do Not Call Class without implementing adequate policies and procedures for maintaining an internal do not call list;

    (f) whether Defendants' conduct constitutes a violation of the TCPA; and

    (g) whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

77. **Adequate Representation**: Plaintiff Farney and Plaintiff Vallianos will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. The Plaintiffs have no interests antagonistic to those of the

Classes, and the Defendants have no defenses unique to either Plaintiff. Plaintiff Farney, Plaintiff Vallianos and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor their counsel have any interests adverse to the Classes.

78.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to either Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Farney and the Pre-Recorded No Consent Class)**

79.     Plaintiff Farney repeats and realleges paragraphs 1 through 78 of this Complaint and incorporates them by reference.

80.     Defendants and/or their agents made unwanted solicitation telephone calls to Plaintiff Farney and the other members of the Pre-Recorded No Consent Class using a pre-recorded voice.

81.     These pre-recorded voice calls were made *en masse* without the consent of the Plaintiff Farney and the other members of the Pre-Recorded No Consent Class.

82.     The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1).  As a result of Defendants' conduct, Plaintiff Farney and the other members of the Pre-Recorded No Consent Class are each entitled to a minimum of $500 in damages for each violation, and up to $1,500 in damages for each violation in the event that the Court determines that Defendants' conduct was willful and knowing.

<u>**SECOND CAUSE OF ACTION**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**

**(On Behalf of Plaintiff Vallianos and the Do Not Call Registry Class)**

83.     Plaintiff Vallianos repeats and realleges the paragraphs 1 through 78 of this Complaint and incorporates them by reference herein.

84.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

85.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[20]

86.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

---

[20] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

87.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Vallianos and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

88.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff Vallianos and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above.

89.     As a result of Defendants' conduct as alleged herein, Plaintiff Vallianos and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

90.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

### THIRD CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Farney and the Internal Do Not Call Class)**

91.     Plaintiff Farney repeats and realleges the paragraphs 1 through 78 of this Complaint and incorporate them by reference herein.

92.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

93.    Defendants or agents calling on their behalf placed solicitation calls to Plaintiff

Farney and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendants to initiate telemarketing calls. 47 C.F.R. 64.1200(d)(1)-(6).

94.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

95.     Defendants have, therefore, violated 47 U.S.C. § 227(c)(5).

96.     As a result of Defendants' conduct as alleged herein, Plaintiffs and the Internal Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

97.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Internal Do Not Call Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Farney and Plaintiff Vallianos, individually and on behalf of the Classes, pray for the following relief:

a)  An order certifying the Classes as defined above; appointing the Plaintiffs as the representative of the Classes; and appointing their attorneys as Class Counsel;

b)  An award of actual and/or statutory damages for the benefit of Plaintiff Farney, Plaintiff Vallianos, and the Classes;

c)  An order declaring that Defendants' actions, as set out above, violate the TCPA;

22

d)  An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Farney and Plaintiff Vallianos request a jury trial.

Respectfully Submitted,

**JOHN FARNEY**, individually, **CASSANDRA VALLIANOS**, individually, and on behalf of those similarly situated individuals

Dated: August 13, 2020

/s/ *Juneitha Shambee*
Juneitha Shambee, Esq.
Shambee Law Office, LTD
701 Main Street, Suite 201A
Evanston, IL 60202
(773) 741-3602
juneitha@shambeelaw.com
Atty: 6308145

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Attorneys for Plaintiffs and the putative Classes*

24